RECEIVED
IN MONROE, LA
SEP 8 - 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LILLIE FAYE RAMEY | CIV. ACTION NO. 07-1286 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CANTRELL MACHINE CO., INC., ET AL. | MAG. JUDGE MARK L. HORNSBY |

## RULING

Plaintiff Lillie Faye Ramey ("Ramey") was injured by a shackle while working at a chicken processing plant. She brought this products liability action against Defendants Cantrell Machine Co., Inc. ("Cantrell"); D & F Equipment Sales, Inc. ("D & F"); Hill & Sons LLC and Hill & Sons, Inc. ("Hill"); Globe Machine Co. & Metal Fabricators, Inc. ("Globe"); and Custom Shackles, Inc. ("Custom Shackles"), alleging that Defendants designed, manufactured, sold, distributed, or otherwise placed the injury-causing shackle into commerce. Ramey contends that the shackle is defective and unreasonably dangerous in design and construction and because an adequate warning was not provided.

Pending before the Court are Motions for Summary Judgment filed by Cantrell, Hill, and Globe. [Doc. Nos. 35, 41, & 45]. For the following reasons, the motions are GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

The Court further gives notice of its intent to dismiss the claims against Defendants D & F and Custom Shackles, for the same reasons stated in this Ruling, unless Ramey files a memorandum in opposition within ten (10) business days of the date of this Ruling.

## I. Facts and Procedural History

Ramey sustained injuries in an accident on July 4, 2006, while working at Pilgrim's Pride Corporation ("Pilgrim's Pride") in its Farmerville, Louisiana, chicken processing plant. Ramey was working on the salvage line when she reached for a chicken suspended by a shackle on a conveyor line. She alleges that her right thumb was caught in the shackle, and the shackle lifted and carried her a certain distance until the upper part of her thumb tore from her hand, and she fell to the floor. She landed on her knee, also allegedly injuring it.

After the accident, Pilgrim's Pride failed to preserve the shackle that injured Ramey. According to the deposition testimony of Harold Starr, III ("Starr"), the Regional Director of Occupational Safety & Health for Pilgrim's Pride, Ramey was injured on a temporary reprocessing line which was used after a fire. When the new line was ready for installation, Pilgrim's Pride removed the temporary line and stored, scrapped, or sold some or all of the parts of the temporary line. Pilgrim's Pride does not know whether the injury-causing shackle was scrapped, stored, or sold.

On May 4, 2007, in response to a state court action filed by Ramey, Pilgrim's Pride located and delivered to Ramey's attorney a shackle which Starr testified was of the same "stainless steel design, size, shape, construction and material that was used on the [temporary] reprocessing line" where Ramey was injured. However, Pilgrim's Pride cannot "verify that the exemplar is an exact duplicate" of the shackle that caused Ramey's injuries. Pilgrim's Pride also cannot identify the manufacturer or seller of the exemplar or of the injury-causing shackle, or the dates that these shackles would have been supplied to Pilgrim's Pride.

On July 3, 2007, Ramey filed this lawsuit in the Third Judicial District, Parish of Union,

State of Louisiana, against Defendants Cantrell, D & F, Hill, and Globe, alleging that "Defendants, or either of them" designed and/or manufactured the injury-causing shackle and that "Defendants, or either of them, sold, distributed, or otherwise placed the shackle . . . into the stream of commerce." On August 8, 2007, the case was removed to this Court pursuant to diversity jurisdiction.

Almost one year later, on May 12, 2008, Cantrell filed the first Motion for Summary Judgment [Doc. No. 35]. On May 16, 2008, counsel for Ramey filed a Motion to Continue Motion for Summary Judgment [Doc. No. 37] on the basis that discovery had not yet been completed. The Court granted Ramey's motion and allowed her an extension of time until August 4, 2008, to oppose Cantrell's Motion for Summary Judgment.

On May 21, 2008, Hill filed its Motion for Summary Judgment [Doc. No. 41]. On June 4, 2008, Ramey's counsel again filed a Motion to Continue Motion for Summary Judgment [Doc. No. 43]. The Court also granted this motion and extended Ramey's time for opposition to August 4, 2008. [Doc. No. 44].

On June 11, 2008, Globe filed its Motion for Summary Judgment [Doc. No. 45]. Ramey's counsel did not timely request an extension of time to respond to this motion.

On July 7, 2008, Ramey filed a First Supplemental and/or Amended Complaint [Doc. No. 51] adding another Defendant, Custom Shackles.

On July 30, 2008, Ramey's counsel filed a Motion for Extension of Time to Respond to Defendants' Motions for Summary Judgment [Doc. No. 52]. In that motion, counsel explained that he and Ramey had come to an "impasse" and that she had requested her file for a second opinion. He requested, on her behalf, that she be given an extension to the close of discovery,

3

September 25, 2008, to file an opposition to all pending Motions for Summary Judgment. Cantrell opposed this motion. Upon review, the Court granted Ramey's motion in part, allowing her until August 18, 2008, to file an opposition to the pending Motions for Summary Judgment.

As of this date, however, Ramey has not opposed the pending Motions for Summary Judgment.

Neither D & F nor Custom Shackles has filed a motion for summary judgment.

## II. Law and Analysis

### A. Summary Judgments

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Louisiana Products Liability Act

The Louisiana Products Liability Act, La. Rev. Stat. 9:2800.51, *et seq.* ("LPLA"), governs Ramey's claims in this matter. *See* LA. REV. STAT. 9:2800.52 (The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]."). A "Manufacturer" is defined as:

> [A] person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
>
> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
>
> (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.

LA. REV. STAT. 9:2800.53.

The LPLA also defines "Seller" as "a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value." LA. REV. STAT. 9:2800.53. However, a seller who did not manufacture the product does not incur liability under the LPLA unless he vouched for the

product as his own. *Slaid v. Evergreen Indem., Ltd.*, 32,363 (La. App. 2 Cir. 10/27/99); 745 So.2d 793, 797. The non-manufacturing seller is responsible for damages in tort "only if he knew or should have known that the product sold was defective, and failed to declare it." *Id.* (internal quotation marks and citations omitted).

Of course, a plaintiff asserting liability against any defendant must prove that the defendant was a manufacturer or seller of the product at issue as defined by statute. *See Stanley v. Wyeth, Inc.*, --- So.2d ----, 2008 WL 1930154, at *6 n.2 (La. App. 1 Cir. May 2, 2008) ("Under the LPLA the first element that must be proven by the claimant is that the defendant is the manufacturer of the product causing plaintiff's harm."); *George v. Housing Auth. of New Orleans*, 2004-2167 (La. App. 4 Cir. 6/29/05); 906 So.2d 1282 (affirming summary judgment in favor of smoke alarm manufacturer where smoke alarm was destroyed in fire and could have been manufactured by either of two companies; further refusing to recognize market share liability in lieu of proof of the identify of the manufacturer because "different smoke alarms by different manufacturers have different qualities" and "cannot be deemed fungible products.").

In order to prevail on a claim under the LPLA, a plaintiff must also show that her damage was "proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." LA. REV. STAT. 9:2800.54; *see also Ashley v. GMC*, 27,851 (La. App. 2 Cir. 1/24/96); 666 So.2d 1320, 1322 (The court "cannot . . . infer the existence of a defect based solely on the fact that an accident occurred."). A product may be proven to be unreasonably dangerous in construction, design, or because an adequate warning

6

was not provided. LA. REV. STAT. 9:2800.54.[1]

### 1. Pending Motions for Summary Judgment

Pending before the Court are Motions for Summary Judgment filed by Cantrell, Hill, and Globe. Each Defendant argues that Ramey cannot meet her burden of proof in this matter and that it is entitled to summary judgment. The Court agrees.

In this case, Ramey cannot meet two of her burdens: she cannot show that any Defendant is a manufacturer or seller of the shackle that injured her, nor can she show that the shackle was unreasonably dangerous in construction or design or that it lacked an adequate warning.

Ramey has asserted claims against five different potential manufacturers and/or sellers of the injury-causing shackle. She was injured by one shackle that could have been manufactured and/or sold by only one company. More than one year after Ramey filed suit and despite Defendants' apparent compliance with the discovery requirements, Ramey has been unable to prove and will not be able to meet her burden under the LPLA of establishing that any one of Defendants manufactured or sold the shackle which injured her.

Similarly, because Ramey does not have the shackle, she is unable to offer expert testimony that the shackle which injured her was defective in some way.

While Pilgrim's Pride produced an exemplar shackle it believes is of the same type and material as the shackle which injured Ramey, Pilgrim's Pride could not "verify" that the exemplar is an "exact duplicate." Pilgrim's Pride also cannot identify the manufacturer or seller of the exemplar or of the injury-causing shackle, or the dates that these shackles would have been

---

[1] A product may also be unreasonably dangerous under the LPLA because it failed to comply with an express warranty. However, Ramey has not asserted any claims under this theory.

7

supplied to Pilgrim's Pride.

Under these circumstances, Cantrell, Hill, and Globe are entitled to summary judgment on the claims against them.

Further, assuming arguendo that Ramey could establish the exemplar was an exact duplicate of the shackle which injured her[2], these Defendants would still be entitled to summary judgment. Each of these Defendants has produced evidence that it did not manufacture or sell the exemplar shackle.

Cantrell's Chief Financial Officer, Tony Rice, examined photographs of the exemplar shackle. He attests that the shackle pictured is not the type normally used on a reprocessing line, but one normally used on a processing line to carry a chicken to a machine that cuts the chicken mechanically. He further attests that the shackle is a common design without any markings and that it could have been manufactured by any number of companies. Finally, he attests that Cantrell has not made shackles since 1989 and that he could find no purchases by Pilgrim's Pride of Cantrell shackles between 1999 and the present. Although Ramey's counsel later deposed Rice and another corporate representative, Rob Hicks, Ramey has presented no evidence to refute Rice's affidavit.

Hill's former President and current consultant, William Jennings Hill, personally inspected the exemplar shackle. He attests that it was not manufactured or sold by Hill because the exemplar has a different finish, different welds, and bends which do not appear to have been

---

[2]If Pilgrim's Pride could verify that the exemplar is identical to the injury-causing shackle, Ramey might be able to show that the shackle was defective in design or that an inadequate warning was provided, but she would not be able to show that the shackle was defective in construction without producing the actual shackle.

8

made by a wire bending machine. Ramey has presented no evidence to refute his affidavit.

Finally, Globe's President, Judy Davis-Godfrey, also personally examined the exemplar shackle. She also performed an analysis of Globe's business records for the past twelve years. Davis-Godfrey attests that Globe does not manufacture shackles like the exemplar; Globe shackles (of any type) have a dull acid-washed finish, while the exemplar has a bright, electro-polished finish. Records from 1995 to the present also show that Globe has not sold or shipped any shackles to Pilgrim's Pride or its predecessor. Ramey has presented no evidence to refute Davis-Godfrey's affidavit.

The Court finds that, under these circumstances, Ramey is unable to meet her burden of identifying Cantrell, Hill, or Globe as the manufacturer of the injury-causing shackle. The Motions for Summary Judgment filed by these Defendants are GRANTED, and all claims against them are DISMISSED WITH PREJUDICE.

### 2. Remaining Defendants

Based on a review of the record in this matter, the Court finds that Ramey will be unable to meet her burden as to the remaining two Defendants, D & F and Custom Shackles. Because Pilgrim's Pride did not maintain the injury-causing shackle, Ramey simply has no way of proving that any Defendant manufactured or sold it or that the shackle was unreasonably dangerous in construction or design or that it had an inadequate warning.[3] Moreover, Pilgrim's Pride cannot

---

[3] Ramey has not argued that she is asserting a cause of action based on a market share liability theory, but, even if she did, no Louisiana court, state or federal, has recognized this theory under the LPLA, and this Court also declines to do so. *See George*, 906 So.2d at 1287 ("While market share liability is recognized by some jurisdictions, we find no Louisiana case law adopting it."); *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245 (5th Cir. 1997) ("After the adoption of the LPLA, Louisiana courts have . . . required identification of the manufacturer of the defective product," and have not adopted market share liability. The LPLA was also adopted

verify that the exemplar it produced is identical to the shackle that caused Ramey's injury.

The Court gives notice to Ramey of its intent to enter judgment in favor of these Defendants as well unless she files a memorandum in opposition within ten (10) business days of the date of this Ruling and Judgment. *See* FED. R. CIV. P. 56(c); *NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957, 965 (5th Cir. 1991) (Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant summary judgment in favor of a party that did not request it, but only if the adverse party is notified and at least ten days in advance.)

### III. Conclusion

For the foregoing reasons, the Motions for Summary Judgment filed by Defendants Cantrell, Hill, and Globe [Doc. Nos. 35, 41, & 45] are GRANTED. The Court will also dismiss Ramey's claims against Defendants D & F and Custom Shackles unless Ramey files a memorandum in opposition within ten (10) business days of the date this Ruling and Judgment are filed.

MONROE, LOUISIANA, this \_\_\_\_8\_\_\_\_ day of \_\_September\_\_, 2008.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

after two Fifth Circuit cases in which the appellate court refused to recognize the market share theory of liability as a theory of proximate causation.).